**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                    :
IRIS GARCIA,                                        :
                                                    :       <u>OPINION AND ORDER</u>
                          Plaintiff,                :
                                                    :          **05 Civ. 1153 (SAS)**
                                                    :          **05 Civ. 1154 (SAS)**
            - against -                             :
                                                    :
                                                    :
ANNAMARIE LEWIS,                                    :
CAROL BURTON,                                       :
VIRGINIA LOWERY, and THE                            :
OSBORNE ASSOCIATION,                                    :
                                                    :
                          Defendants.               :
-------------------------------------------------------X
**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.     **INTRODUCTION**

         In these two related actions, Iris Garcia, proceeding pro se, is suing

the Osborne Association ("Osborne") and three Osborne employees, AnnaMarie

Lewis, Carol Burton, and Virginia Lowery, for violations of Title VII of the Civil

Rights Act of 1964.[1]  Garcia, a former employee of Osborne, alleges that she was

sexually harassed by Lewis, subjected to a hostile work environment, and was then

terminated from her employment in retaliation for filing a sexual harassment claim

_____

[1]        42 U.S.C. § 2000e *et seq.*

against Osborne and Lewis with the New York State Division of Human Rights

("DHR").  As a result, Garcia seeks monetary damages.  Defendants now move to

dismiss both Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons stated below, defendants' motions are denied in part and granted in

part.

## II.    BACKGROUND

Osborne is a not-for-profit organization that provides treatment,

education, and vocational services for people involved in the criminal and juvenile

justice systems, including prisoners and former prisoners, their children, and other

family members.[2]  Garcia began working in Osborne's Youth and Family Services

Department in Brooklyn as a Family Services Specialist (social worker) in late April

2002.[3]  As part of her job, Garcia was required to travel around the state to attend

presentations and meetings.[4]

Garcia alleges that on the first day she began working at Osborne,

_____

[2]      *See* Memorandum of Law in Support of Defendants' Motion to
Dismiss the Complaint Against Burton, Lowery, and Osborne ("Def. Mem.") at 5.

[3]      *See id.* at 4.

[4]      *See generally* 10/31/02 Sexual Harassment Complaint filed with the
New York State Division of Human Rights ("DHR Sexual Harass. Compl."), Ex. A
to 3/25/05 Affirmation of Maria Keane ("Keane Aff."), defendants' counsel.

while at an off-site meeting, a female colleague named AnnaMarie Lewis (an

Osborne employee based in upstate New York) began a pattern of sexual

harassment that consisted of "call[ing] [her] out of [her] name" by using terms of

endearment like "honey," "sweetheart," and "love," and "continuously touch[ing]

her."[5]

Garcia was disturbed by Lewis' behavior[6] and, upon the advice of her

supervisor, spoke to Lewis about her actions.[7]  She related to Lewis that she

wanted to be addressed only as "Ms. Garcia," and did not want Lewis to "[put] her

hands on [Garcia] when she's speaking to [Garcia]."[8]  On May 31, 2002, Garcia

notified the Human Resources Department of her allegations against Lewis, but

---

[5]     Sexual Harassment Complaint, 05 Civ. 1154 (SAS) ("Sexual Harass. Compl."), at 4.

[6]     Garcia also alleges that as a result of Lewis' behavior toward her, she experienced psychological and personal problems.  Specifically, Garcia alleges that because of Lewis' actions she experienced anxiety attacks which required psychological care and which caused her to "lash out" at her husband and children. Her anxiety problems also eventually resulted in her children moving out of her house to live with their biological father and her husband's "relapse."  Although it is unclear from the Complaint, the Court assumes that the "relapse" Garcia refers to was related to substance abuse or alcohol.  *See* DHR Sexual Harass. Compl.  at 11.

[7]     *See id.* at 10.

[8]     *Id.*

represented to them that she had resolved the situation on her own.[9]

Subsequently, on October 8, 2002, Garcia reported to the Human Resources Department that Lewis had continued to sexually harass her. Two days later, she sent an e-mail to Human Resources recounting her allegations.[10] Specifically, she claimed that over a span of approximately seven months Lewis "put her hands in her pants and seemed to be scratching her crotch,"[11] told Garcia that she wanted to "get her hands on [Garcia] before anyone else [did],"[12] put her hands on Garcia's shoulder when discussing a work project, put her hand on Garcia's hand on two different occasions, rubbed her hand on Garcia's arm when helping Garcia make a phone call, sat next to Garcia at several business lunches, lingered to watch TV in Garcia's room while on a business trip and put her knee on Garcia's bed, "made it known" that her son would not be home and invited Garcia to spend the night at her house,[13] and referred to Garcia at different times as

---

[9]    *See id.*

[10]    *See id.* at 13.

[11]    *Id.* at 8.

[12]    *Id.*

[13]    *See id.* at 8, 9, 11, 12.

"honey," "love," "sweetheart," "sweety," and "doll."[14]  Garcia also requested a

transfer to a different division at Osborne and asked that she have no more contact

with Lewis.[15]  Shortly after Garcia made these allegations, defendant Burton

(Garcia's supervisor of two weeks) agreed that Garcia could restrict her contact

with Lewis to fax and e-mail only.[16]

In further response to the sexual harassment allegations, defendant

Lowery and another member of the Human Resources Department met with Garcia

on October 28, 2002, to discuss her concerns.  The Human Resources employees

told Garcia that their internal investigation revealed no sexual harassment.  Possibly

as a means of explanation for Lewis' behavior, they went on to state that the culture

of Osborne was "touchy, feely" and that Lewis' behavior was not intentional.[17]

Although the Human Resources staff confirmed that they knew Garcia was "really

bothered" by Lewis' behavior, they suggested that Garcia's allegations might

actually be a result of  homophobia directed towards Lewis.[18]

---

[14]      *Id.*

[15]      *See id.* at 15.

[16]      *See id.*

[17]      *See id.*

[18]      *See id.*

Finding the response of the Human Resources Department unsatisfactory, Garcia filed a sexual harassment complaint against Lewis and Osborne with the DHR on October 31, 2002.[19] Shortly thereafter, on November 13, 2002, Garcia was terminated from her position at Osborne by defendant Burton for unsatisfactory job performance.[20]

Following her termination, Garcia filed a second complaint with the DHR for retaliatory firing.[21] In its response to this complaint, the DHR stated that it had investigated Garcia's allegations and that there was

> no causal connection between the Complainant's claims of discrimination and discharge from her at will employment . . . . The record shows Complainant had performance issues throughout her employment that were unrelated to her issues of sexual harassment and did not involve the alleged harasser . . . . The record supports that Complainant was discharged based on her failure to correct her performance deficiencies.[22]

---

[19]    *See id.* at 7.

[20]    *See* 12/13/02 Retaliation Complaint filed with the DHR ("DHR Retal. Compl."), Ex. B to Keane Aff., at 4, 7.

[21]    *See id.* at 1.

[22]    *See* 10/26/04 DHR Retaliation Complaint Determination ("DHR Retal. Compl. Deter."), Ex. C to Keane Aff., at 2.  A second report from the DHR was issued the same day in response to Garcia's sexual harassment complaint against Osborne and Lewis.  Notably, the Report states, ". . . even assuming that the alleged harasser engaged in the conduct . . . the alleged behaviors do not rise to the level of severity and pervasiveness to constitute sexual harassment."  The Report

After receiving the DHR's response, Garcia obtained a "right to sue" letter from the Equal Employment Opportunity Commission and filed this lawsuit.

## III.    LEGAL STANDARD

### A.    Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "it appears beyond doubt that the [nonmovants] can prove no set of facts in support of [their] claims which would entitle [them] to relief."[23]  The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[24]  When deciding a motion to dismiss, courts must accept all factual allegations as true, and draw all

---

further suggested that instead, plaintiff "upon knowing the sexual orientation of the alleged harasser, became overly sensitive to any of the alleged harasser's behaviors."  *See* 10/26/04 DHR Sexual Harassment Complaint Determination ("DHR Sexual Harass. Deter."), Ex. D to Keane Aff., at 2.

[23]    *Weixel v. Board of Educ. of New York,* 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

[24]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 176 (2d Cir. 2004) (quotation omitted).

reasonable inferences in the nonmovants' favor.[25]

Further, a complaint need not state the legal theory, facts, or elements underlying the claim in most instances.[26] Pursuant to the simplified pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."[27] And, when a plaintiff is proceeding pro se, courts are instructed to construe the complaint liberally.[28] This is particularly important when a pro se plaintiff alleges a civil rights violation.[29]

Finally, while courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings[30] in

---

[25] *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).

[26] *See Phillips v. Girdich,* No. 04-0347, 2005 WL 1154194, at *2-3 (2d Cir. May 17, 2005).

[27] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).

[28] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997).

[29] *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).

[30] *See Chambers*, 282 F.3d at 152-53; *see also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 331 (S.D.N.Y. 2003); Fed. R. Civ. P.

order to determine if a complaint should survive a 12(b)(6) motion.[31]  The records

of state administrative proceedings may be considered.[32]

**B.      Constitutional Claims**

**1.      Sexual Harassment Claims**

Employers are forbidden from discriminating "against any individual

with respect to . . . compensation, terms, conditions, or privileges of employment

because of such individual's . . . sex . . . ."[33]  Specifically, Title VII is violated

when a hostile work environment is created.[34]

In order to prevail on a sexual harassment claim alleging hostile work

environment, a plaintiff must establish three things:  (1) that the harassment is

---

10(c).

[31]      Although Garcia did not physically attach the DHR complaint to her
Complaint, the Court deems that complaint to be incorporated by reference
because of Garcia's attachment of the EEOC "right to sue" letter, which adopted
the findings of the DHR.  *See* Retaliation Complaint, 05 Civ. 1153 (SAS) ("Retal.
Compl."), at 6.

[32]      *See Thomas v. Westchester County Healthcare Corp.*, 232 F. Supp.
2d 273, 276 (S.D.N.Y. 2002) (quoting *Evans v. The New York Botanical Garden,*
No. 02 Civ. 3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002)).

[33]      42 U.S.C. § 2000e-2(a)(1)

[34]      *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 752 (1998); *Faragher
v. City of Boca Raton,* 524 U.S. 775, 786 (1998).

"sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment;"[35] (2) that the inappropriate treatment is motivated by plaintiff's gender;[36] and (3) that "a specific basis exists for imputing the conduct that created the hostile work environment to the employer."[37]

To meet the first prong of the test, both objective and subjective elements must be satisfied: "not only must the victim herself subjectively perceive [the] environment to be abusive, but the misconduct of which a plaintiff complains also must be 'severe or pervasive enough to create an objectively hostile or abusive work environment.'"[38] To determine whether allegations of abusive conduct are sufficient to meet the threshold for an objectively hostile environment, courts may consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and

---

[35]     *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993).

[36]     *See Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir. 2002); *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001).

[37]     *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997).

[38]     *Gratton v. JetBlue Airways,* No. 04 Civ. 7561, 2005 WL 1251786, at *9 (S.D.N.Y. May 25, 2005) (quoting *Petrosino v. Bell Atlantic,* 385 F.3d 210, 221 (2d Cir. 2004)).

(4) whether it unreasonably interferes with an employee's work performance.[39]

As a general rule, incidents of sexual harassment must be "'sufficiently continuous and concerted in order to be deemed pervasive.'"[40] However, the Second Circuit has emphasized that a single act that transforms a plaintiff's workplace can be sufficient to establish a hostile work environment.[41]

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "while a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*'"[42]

Accordingly, whether harassment can be considered objectively severe or pervasive must be determined by looking to the totality of circumstances surrounding the abuse.[43] Facially sex-neutral incidents can be considered among the totality of

---

[39] *See Figueroa v. City of New York,* 198 F. Supp. 2d 555, 564 (S.D.N.Y. 2002) (citing *Howley v. Town of Stratford,* 217 F.3d 141, 153-54 (2d Cir. 2000)).

[40] *Feingold v. New York,* 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Alfano,* 294 F.3d at 374).

[41] *See id. See also Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir. 2003); *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 70 (2d Cir. 2000).

[42] *Terry,* 336 F.3d at 148 (quoting *Whidbee,* 223 F.3d at 70) (alterations and emphasis in the original).

[43] *See Harris,* 510 U.S. at 23.

circumstances courts review so long as a reasonable fact-finder could conclude

that they were actually based on sex[44] and physical harassment may also be

considered.[45]

However, employers are not automatically liable for a hostile work

environment created by their employees.[46]  In order to meet the third prong of the

test, a plaintiff must demonstrate a specific basis for holding the employer liable.  In

the Second Circuit, employers can be held liable for the illegal acts of a plaintiff's

co-workers.

> Where an employee is the victim of sexual harassment, including
> harassment in the form of a hostile work environment, by non-
> supervisory co-workers, an employer's vicarious liability depends
> on the plaintiff showing that the employer knew (or reasonably

---

[44]     *See Alfano,* 294 F.3d at 378.  *See also Howley,* 217 F.3d at 144-45
(holding on appeal from grant of summary judgment to defendant that an
objectively hostile work environment was created after the plaintiff's co-worker
verbally harassed her in gender-specific terms in public, stated that plaintiff had
gained her office of lieutenant "only by performing fellatio," and attempted to
destroy her credibility among subordinates); *Cruz v. Coach Stores,* 202 F.3d 560,
571 (2d Cir. 2000) (holding on appeal from grant of summary judgment to
defendant that the sexual harassment experienced by the plaintiff was severe and
pervasive enough to support a claim for hostile work environment when a co-
worker repeatedly stood very close to women in the office when talking to them,
and regularly "back[ed] [plaintiff] into the wall until she had to 'cut the conversation
short' in order to extricate herself").

[45]     *See Cruz,* 202 F.3d at 571.

[46]     *See Burlington,* 524 U.S. at 765; *Faragher,* 524 U.S. at 780.

should have known) about the harassment but failed to take appropriate remedial action.[47]

## 2.      Retaliation Claims

Retaliation claims brought under Title VII are founded on 42 U.S.C. § 2000e-3(a) which states that, "It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this title, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."[48]  This law applies to any individual who has been discriminated against by his or her employer based on "race, color, religion, sex, or national origin."[49]

A prima facie case of retaliation is established when a plaintiff can show:  (1) that she participated in a protected activity known to the defendant; (2) an adverse employment action that disadvantaged her; and (3) a casual connection between the protected activity and the adverse employment action.[50]  In order to

---

[47]      *Petrosino,* 385 F.3d at 225.

[48]      42 U.S.C. § 2000e-3(a).

[49]      42 U.S.C. § 2000e-2(a)(1).

[50]      *See Thomas,* 232 F. Supp. 2d at 279 (citing *Quinn v. Gree Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998)).

demonstrate participation in a "protected activity," a plaintiff's allegations of

discrimination must have been based on "'a good faith, reasonable belief that the

underlying challenged actions of the employer violated the law.'"[51] A plaintiff is not

required to prove that the conduct she complained of was in fact a violation of Title

VII.[52] As a result, an employer is prohibited from retaliating against an employee

because she filed formal or informal protests of discrimination, even if the

employee's beliefs were mistaken.[53] However, since "'not every act by an

employee in opposition to . . . discrimination is protected,'"[54] the reasonableness

of a plaintiff's belief must be assessed "in light of the totality of the

circumstances."[55] If it is absolutely clear that no Title VII violation has occurred, a

---

[51]     *Wimmer v. Suffolk Co. Police Dep't,* 176 F.3d 125, 134 (2d Cir. 1999) (quoting *Manoharan v. Columbia Univ. College of Phys. and Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). *Accord McMenemy v. City of Rochester,* 241 F.3d 279, 282 (2d Cir. 2001); *Quinn,* 159 F.3d at 769; *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir. 1996).

[52]     *Wimmer,* 176 F.3d at 134.

[53]     *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271(2001).

[54]     *Wimmer,* 176 F.3d at 135 (quoting *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir. 1997)).

[55]     *Kaible v. U.S. Computer Group,* 27 F. Supp. 2d 373, 377 (E.D.N.Y. 1998). *See also McMenemy,* 241 F.3d at 285 (holding, based on totality of the circumstances, that plaintiff's investigation of sexual harassment in a firefighter's union was protected activity even though the union could not be considered an employer for purposes of Title VII); *Reed,* 95 F.3d at 1178-80 (finding that

plaintiff's activities will not be protected.[56]

### 3. Title VII Claims Against Individual Defendants

In the Second Circuit, only employers are subject to liability under

Title VII.[57] Individuals (generally co-workers) are not subject to liability in a Title

---

plaintiff's belief that her male co-worker's actions had created a hostile work environment was reasonable after she had been treated as a subordinate by these co-workers and subjected to verbal abuse of a sexual nature); *Ghirardelli v. McAvey Sales and Service,* 287 F. Supp. 2d 379, 386 (S.D.N.Y. 2003) (finding that plaintiff had a reasonable belief that abusive behavior by a co-worker was based on her gender because male employees were not treated in the same manner).

[56] *See Wimmer,* 176 F.3d at 135 (holding that plaintiff could not have held a good faith, reasonable belief that he was engaging in a protected activity because his opposition was not directed at an "unlawful employment practice" but instead involved discrimination by co-workers directed at the public at large). *See also Manoharan,* 842 F.2d at 594 (holding that plaintiff could not have held a reasonable belief when he "neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]"); *Kunzler v. Canon, USA,* 257 F. Supp. 2d 574, 581-82 (E.D.N.Y. 2003) (finding that plaintiff could not have reasonably believed he was opposing a discriminatory practice because the sexual harassment he complained about concerned harassment by a co-worker against a customer, and not other employees); *Sullivan-Weaver v. New York Power Auth.*, 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) (holding that plaintiff's opposition to her replacement by another woman, with whom her supervisor allegedly had a romantic relationship, was not based on a good faith, reasonable belief that she was engaging in protected activity, because the action she brought did not involve gender discrimination at all).

[57] *See Quinn*, 159 F.3d at 766.

15

VII action in their individual[58] or official capacities.[59]

## IV.    DISCUSSION

### A.    Constitutional Claims

Garcia alleges that defendants violated her rights under Title VII by creating a hostile work environment and terminating her employment in retaliation for filing a sexual harassment charge with the DHR.    Defendants, in turn, contend that Garcia cannot meet the threshold requirement of showing an objectively hostile or abusive work environment and that she never engaged in a protected activity. Defendants further argue that even if Garcia's sexual harassment and retaliation claims are cognizable, defendants Lewis, Lowery, and Burton cannot be liable based on well-established Second Circuit precedent.

### 1.    Sexual Harassment Claim Against Osborne

As discussed earlier, the threshold requirement for establishing a prima facie case of  hostile work environment in violation of Title VII is a showing that the

---

[58]      *See Tomka v. Seiler,* 66 F.3d 1295, 1313-17 (2d Cir. 1995), *abrogated on other grounds by Burlington,* 524 U.S. at 765.  *See also Cioce v. County of Westchester*, No. 02 Civ. 3604, 2003 WL 21750052, at *5 n.9 (S.D.N.Y. July 28, 2003); *Oshinsky v. New York City Housing Auth.*, No. 98 Civ. 5467, 2000 WL 1225796, at *5 (S.D.N.Y. Aug. 28, 2000).

[59]      *See Tomka,* 66 F.3d at 1313.

conduct complained about is objectively hostile or abusive. Title VII was not intended to "sterilize the workplace,"[60] and as a result, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."[61] Therefore, a plaintiff must establish that "either a single incident [of harassment] was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."[62]

At the motion to dismiss stage, Garcia has alleged facts sufficient to meet the threshold requirements of a subjectively and objectively hostile or abusive work environment. Garcia has adequately alleged that she found Lewis' behavior to be abusive. In fact, Garcia has alleged psychological trauma as a result of the alleged harassment.

By the same token, Garcia has made sufficient allegations to support the objective prong of the test. Drawing every inference in her favor, and looking at the totality of the circumstances surrounding the alleged hostile work environment,

---

[60]     *Lucas v. South Nassau Comtys. Hosp.,* 54 F. Supp. 2d 141, 147 (E.D.N.Y. 1998).

[61]     *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986).

[62]     *Cruz,* 202 F.3d at 570.

the actions of Garcia's co-worker may have been pervasive enough to impact the conditions of Garcia's employment. Garcia alleges that Lewis perpetrated acts of harassment against her nearly every time they were together. Garcia also alleges physical harassment (Lewis' constant touching) and the use of terms of endearment which could reasonably be found to be based on sex. Moreover, the alleged harassment could well have interfered with Garcia's work performance, based on the psychological trauma she claims to have experienced. Accordingly, sufficient allegations exist to support a claim that Garcia experienced an objectively abusive work environment. The defendants' motion to dismiss Garcia's sexual harassment complaint against Osborne is therefore denied.

## 2.     Retaliation Claim Against Osborne

The first element required to establish a prima facie case of retaliation is participation in a protected activity known to the defendant, such as filing a protest against discrimination.[63] The plaintiff is only required to allege facts sufficient to establish that she held a "good faith, reasonable belief" that her opposition to sexual harassment constituted "protected activity" for the purposes

---

[63]     *See Wimmer,* 176 F.3d at 134.

of Title VII.[64]

Construing the Complaint liberally, Garcia has adequately alleged a "good faith, reasonable belief" that she was engaging in protected activity by complaining of sexual harassment.  Same-sex sexual harassment is a cognizable claim under Title VII,[65] and it is undisputed that Garcia brought her sexual harassment complaint in good faith.  Moreover, when reviewing the circumstances surrounding Garcia's DHR complaint, it is clear that her belief was reasonable.  Specifically, Garcia alleges that as soon as she began work at Osborne she was "continuously touched" and addressed by Lewis in an inappropriate manner.  When she expressed discomfort, Osborne responded by encouraging Garcia to discuss her allegations with Lewis (eventually giving her permission to cease personal contact with Lewis).  These facts, which must be accepted as true,

---

[64]     Both the plaintiff and defendants have relied on the "objectively reasonable" standard established by the Eleventh Circuit in *Little* and followed by some courts in this district.  This standard, however, has not been accepted or rejected by the Second Circuit.  Indeed, in *Wimmer,* decided two years after *Little,* the Second Circuit required only "a good faith, reasonable belief."  *Id.* Nevertheless, even under the *Little* test, Garcia's claim would still meet the "objectively reasonable" standard.  *See generally Reilly v. Beth Israel Med. Ctr.,* No. 97 Civ. 7712, 1999 WL 185261, at *4 (S.D.N.Y. Mar. 31, 1999) (quoting *Little,* 103 F.3d at 960) (stating that in order to establish participation in protected activity, a plaintiff's belief that his employer's actions were unlawful must be objectively as well as subjectively reasonable).

[65]     *See Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 82 (1998).

establish that Garcia could have reasonably assumed that Lewis' behavior towards her constituted sexual harassment in violation of Title VII. Whether or not Garcia can ultimately succeed with her sexual harassment claim against Osborne is irrelevant for purposes of assessing the adequacy of her retaliation claim. Accordingly, sufficient allegations exist to support a claim that Garcia was engaged in a protected activity. Defendants' motion to dismiss Garcia's complaint of retaliatory discharge against Osborne is therefore denied.

### 3.   **Title VII Claims Against Individual Defendants**

In the Second Circuit, individuals are not subject to liability in a Title VII action in their individual or official capacities.[66] This is true even if the employee had supervisory authority over the complainant.[67] As a result, the claims against defendants Lewis, Burton, and Lowery, all individual employees of Osborne, are dismissed.[68]

---

[66]    *See Tomka*, 66 F.3d at 1313.

[67]    *See id.*

[68]    While the Court will not consider arguments presented in unauthorized sur-replies, it is worth noting that there is a split among the Circuits regarding the liability of individual employees under Title VII. In her sur-reply, Garcia argues that the Court should follow precedent from the United States District Courts for the Districts of Maine, Massachusetts, and Rhode Island and hold that supervisors can be found individually liable for Title VII violations. *See* Reply Memorandum of Law in Support of Opposition to Motion to Dismiss by the Defendants Carol

## V.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's Title VII claims for sexual harassment and retaliatory termination are granted with respect to defendants Lewis, Burton, and Lowery and denied with respect to Osborne.  IT IS HEREBY ORDERED that case number 05 Civ. 1154 be consolidated into lead case number 05 Civ. 1153 for all purposes and all subsequent filings be filed under that lead case number.  The Clerk of the Court is directed to close this motion (docket # 5).  A conference is scheduled for 4:30 p.m. on June 24, 2005, in Courtroom 15C.

---

Burton, Virginia Lowery, and the Osborne Association ("Rep. Mem.") at 2. However, because this Court "must follow [binding Second Circuit] precedent unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled," *Tomka* is the controlling authority.  *See United States v. Emmenegger,* 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004).  As noted earlier, *Tomka* states that individuals are not subject to liability in a Title VII action.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           June 16, 2005

**Plaintiff (Pro se):**

Iris Garcia
381 E. 160th St., Apt. 6
Bronx, NY 10451
(718) 710-5610

**For Defendant:**

Maria Keane, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000